# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEXIS PEREZ,
**Plaintiff,**

v.

NICOLAUS J. KUEHN, et al.,
**Defendant.**

No. 3:25-cv-1169 (SRU)

## INITIAL REVIEW ORDER

The plaintiff, Alexis Perez, is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC").[1]  He commenced this action *pro se* to recover damages under 42 U.S.C. § 1983 against four individuals who allegedly work, or worked, at the MacDougall-Walker Correctional Institution ("MacDougall"): Dr. Nicolaus Kuehn, Nurse Practitioner ("NP") Akina Richards, Regional Chief Operating Officer ("RCOO") Jennifer Cruz, and Nurse Jane Doe.   Compl., Doc. No. 1.

After an initial review under 28 U.S.C. § 1915A, I determined that Perez had plausibly alleged an Eighth Amendment claim and a state law recklessness claim against Nurse Jane Doe in her individual capacity for damages.   Initial Review Order ("IRO"), Doc. No. 10, at 11.   I dismissed without prejudice any claims against Dr. Kuehn, NP Richards, and RCOO Cruz.  *Id.* I advised Perez that he had one opportunity to file an amended complaint on or before January 26, 2026, to correct the deficiencies of his claims.   *Id.*

---

[1]  I may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).   The publicly available DOC website shows that Perez was sentenced on January 31, 2022, to a term that has not yet expired and that he is still housed at MacDougall.   *See* Inmate Information, Conn. State Dep't of Corrections, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279694 (last accessed June 23, 2026).

1

Perez timely filed an amended complaint against Dr. Kuehn, NP Richards, and RCOO Cruz in their individual and official capacities.   Am. Compl., Doc. No. 13.   He then filed a second amended complaint.   Sec. Am. Compl., Doc. No. 14.[2]   I now consider whether Perez has stated any plausible claims under 42 U.S.C. § 1983 against Dr. Kuehn, NP Richards, and RCOO Cruz (collectively, "defendants") in his second amended complaint.[3]

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from that relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).   Conclusory allegations are not sufficient.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

---

[2] The first and second amended complaints are essentially identical, with the second amended complaint including pages that identify the exhibits attached to that complaint.   Perez did not name Jane Doe as a defendant in either his first or second amended complaints.   In my Initial Review Order, I advised Perez that "any amended complaint will completely replace his prior complaint in this action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference."   IRO, Doc. No. 10, at 11.   Accordingly, I consider Perez to have abandoned his claims against Jane Doe in this action.

[3] In this initial review under 28 U.S.C. § 1915A, I only consider whether Perez states any plausible claims under 42 U.S.C. § 1983.   That is because the core purpose of an initial review order is to make an initial screening determination of whether the lawsuit may proceed in federal court and whether it should be served upon the named defendants.   If there are no facially plausible federal law claims against any of the named defendants, then the court should decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.   On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed via a motion to dismiss or motion for summary judgment.   More generally, a court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims via a motion to dismiss or motion for summary judgment.

*Twombly*, 550 U.S. at 570.   Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    ALLEGATIONS

I consider the following allegations to be true for purposes of my initial review of Perez's second amended complaint.

On April 1, 2023, Perez broke his right hand during an altercation with another inmate at MacDougall.   Sec. Am. Compl., Doc. No. 13, ¶ 8.   That same day, he informed the defendants that his hand was broken and he was suffering from severe pain.   *Id.*   The defendants laughed at him and made remarks about how he should not have been fighting.   *Id.*   Perez was placed in the Restrictive Housing Unit ("RHU") without receiving any medical treatment for his hand injury.   *Id.*   While at the RHU, Perez experienced "massive" pain due to his untreated hand. *Id.*   Although Perez's hand was severely swollen, the defendants neglected Perez's medical needs and therefore ignored their duty as medical staff.   *Id.* ¶ 9.

Under DOC Administrative Directive 9.4, all inmates must be assessed by medical and mental health staff prior to RHU placement.   *Id.* ¶ 10.   None of the defendants followed the provisions set forth in the MacDougall handbook.   *Id.* ¶ 9.

During the next two months, Perez submitted inmate and administrative remedy requests to RCOO Cruz, NP Richards, and Dr. Kuehn.   *Id.* ¶ 11.   Each defendant denied Perez proper medical care for his broken hand and related pain.   *Id.*   Perez remained in "complete pain."   *Id.*

3

In response to his continued requests for medical care, the defendants made negative remarks to Perez. *Id.* ¶ 12. One defendant told Perez that he should "learn how to swing." *Id.*

On May 21, 2023, Perez filed a Health Services Administrative Remedy ("HSAR") to request an X-ray. *Id.* at 12. In a response dated June 14, 2023, medical staff upheld, in part, Perez's HSAR for the stated reason that an "Xray was ordered." *Id.* at 13.

On June 14, 2023, Dr. Kuehn provided Perez with an X-ray for his right hand. *Id.* ¶ 13. Dr. Kuehn concluded, based on the X-ray, that there was no acute fracture or dislocation in Perez's right hand. *Id.*

After that X-ray, Perez continued to complain about his pain. *Id.* ¶ 14. He asked each defendant to provide him with another X-ray because his hand felt "broke." *Id.* But the defendants continued to deny Perez proper medical care. *Id.*

Perez filed an HSAR on February 27, 2025 that highlighted the lack of treatment received for his hand injury and the "pain and discomfort" he was experiencing. *Id.* at 11. He noted that he had had been scheduled to see an orthopedic specialist in April 2024 but had yet to see an orthopedist. *See id.* He also complained that he had "written numerous sick call requests seeking treatment of [his] painful and injured hand with no results" and that he had been "suffering" for almost twenty-four months "with no medical treatment." *Id.*

In a response dated May 12, 2025, NP Richards denied Perez's HSAR, pointing out that Perez had "multiple visit[s]" with nursing staff to address his "right hand pain" and had an X-ray on June 14, 2023 that showed no fracture or dislocation in his right hand. *Id.* at 10. NP Richards also addressed Perez's complaints about his pain and failure to see an orthopedic specialist in her response, writing:

4

> No clinical indication for orthopedic specialist at this time an[d] no discussion with me of referral to orthopedic specialist.   Referred for EMG studies, not orthopedics as not clinically indicated at this time.   Analgesics in place for pain[.]   Have been given treatment (provider visits, nursing visit[,] pain medication, Xray).   At this time we will repeat Xrays.   Continue pain medication.

*Id.*

An imaging report from an X-ray completed on May 8, 2025 indicated that Perez had "a fracture of the mid shaft of the fifth metacarpal" that had "healed in mild deformity."   *Id.* at 8.

On May 14, 2025, Perez was seen by an orthopedist who noted Perez had a "history of 'over a year' of hand symptoms" and complained of pain in his hand.   *Id.* at 6.   The orthopedist concluded that Perez had a fracture in his right hand that had healed with a "mild deformity."   *Id.* ¶ 16.

## III.    DISCUSSION

In his second amended complaint, Perez asserts that the defendants violated the Eighth and Fourteenth Amendments in their individual and official capacities.   *Id*. at 1, 3.   He seeks money damages.   *Id*.

### A.  Official Capacity Claims

I first address Perez's claims against the defendants in their official capacities.   The Eleventh Amendment bars claims for monetary damages against state defendants in their official capacities.   *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   Perez's official capacity claims seek only monetary damages.   Therefore, I dismiss Perez's Eighth and Fourteenth Amendment claims for monetary damages against the defendants in their official capacities.

### B.  Individual Capacity Claims

In contrast, Perez may sue for monetary damages against the defendants in their individual capacities if he alleges facts that establish that the defendants were personally involved in the alleged constitutional violation. *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991). Accordingly, I consider whether Perez has plausibly alleged that any of the defendants violated the Eighth and Fourteenth Amendments in their individual capacities.

### 1. Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). But "not every lapse in medical care is a constitutional wrong," and "a prison official violates the Eighth Amendment only when two requirements are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, (1994)). Those two requirements are referred to as the objective and subjective elements of an Eighth Amendment claim. *Spavone*, 719 F.3d at 138.

The objective component requires a plaintiff to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order) (citation omitted). Whether a medical need is sufficiently serious depends on a variety of factors, including whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and

6

whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted).

Under the subjective requirement, a defendant must have been actually aware that their actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 836–37). The culpability required for a deliberate indifference claim exceeds mere negligence. *See Farmer*, 511 U.S. at 835-40. Rather, the defendant must act with "culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (cleaned up). "Officials need only be aware of the risk of harm, not intend harm." *Spavone*, 719 F.3d at 138 (citation omitted). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citing *Chance*, 143 F.3d at 703). "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703 (citations omitted).

In my prior Initial Review Order, I concluded that Perez had plausibly alleged a serious injury and thereby satisfied the Eighth Amendment's objective element. IRO, Doc. No. 10, at 5. In his second amended complaint, Perez alleges nearly identical facts about his hand injury and pain. I therefore reiterate my earlier conclusion that Perez has alleged a sufficiently serious medical condition and satisfied the objective element.

I earlier dismissed Perez's Eighth Amendment claims against NP Richards, RCOO Cruz, and Dr. Kuehn because Perez had not alleged facts to establish the subjective element. IRO,

Doc. No. 10, at 5-9.   I explained that Perez had not sufficiently alleged that either Cruz or Richards was personally involved in the alleged Eighth Amendment violation.   *Id.* at 6-7.   I also observed that there was an insufficient factual basis to conclude that Dr. Kuehn acted with the culpability needed for a deliberate indifference claim, which requires more than a showing of negligence.   *Id.* at 8-9.   The main question regarding Perez's Eighth Amendment claims, then, is whether Perez satisfies the subjective element of his Eighth Amendment claims against the three defendants.

Perez complains that he was not afforded access to medical treatment for his hand injury prior to or after his RHU placement.   Sec. Am. Compl., Doc. No. 14, ¶ 8.   To support his claim, he alleges that prior to his RHU placement, he "informed each defendant[] 'verbally' of his severe pain on his right hand" and expressed to them that he thought his hand was broken.   *Id.* Instead of providing him with medical treatment, however, the "Defendants then continued to laugh[] and make smart rem[a]rk[s]" and left him in the RHU "with a massive amount of pain due to his untreated hand."   *Id.*   After he was placed in the RHU, each defendant allegedly ignored his administrative remedy requests for medical treatment, made negative remarks, and "ignored [their] duties as medical professional[s]" for two months.   Sec. Am. Compl., Doc. No. 14, ¶¶ 11-12.   Finally, Perez alleges that after Dr. Kuehn read his X-ray in June 2023, "each defendant" ignored his complaints and denied him medical care.   *Id.* ¶ 14.

At this initial review stage, I must credit Perez allegations as true.   In light of his assertions that he informed the defendants of his hand injury but they did not treat his injury, I conclude that Perez sufficiently states a plausible claim that all three defendants—Dr. Kuehn, NP Richards, and RCOO Cruz—were aware of, but ignored, his severe medical condition.

8

Accordingly, Perez has alleged facts that, taken as true, satisfy the Eighth Amendment's subjective requirement. I will therefore allow Perez to proceed on his Eighth Amendment claim for monetary damages against all three defendants in their individual capacities for their deliberate indifference to his serious medical needs.

### 2        Fourteenth Amendment Violation

Perez asserts two Fourteenth Amendment claims. First, Perez maintains that each defendant violated his Fourteenth Amendment procedural due process right by failing to abide by the MacDougall handbook and DOC policies, which require prisoners to undergo medical and mental health assessments before being placed in the RHU. *See* Sec. Am. Compl., Doc. No. 14, ¶ 17. Secondly, Perez asserts that the defendants violated his Fourteenth Amendment substantive due process right through their deliberate indifference to his medical needs. *Id.* ¶ 18.

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). "While procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects these substantive rights 'no matter the process employed by the State.'" *Goode v. Doe*, 2024 WL 4008245, at *2 (D. Conn. Aug. 30, 2024) (quoting *Case v. Anderson*, 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017)).

a.        <u>Violation of Prison Policy and Administrative Directives</u>

"An allegation that a prison official did not adhere to a state law, regulation or prison directive or policy does not rise to the level of a violation of a federally or constitutionally

9

protected right." *Mejia v. Kurtzenacker*, 2022 WL 19331, at \*10 (D. Conn. Jan. 3, 2022); *see Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) (summary order) (noting that "failure to comply with a state law or administrative directive does not by itself establish a violation of § 1983"). That is because prison grievance policies do not "create federally protected due process entitlements to specific state-mandated procedures." *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (citation omitted); *see also Schlosser v. Manuel*, 2020 WL 127700, at \*5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly.").

Because Perez's procedural due process claim centers on the defendants' failure to abide by prison grievance procedures, and state prison grievance procedures do not entitle Perez to any procedural due process right, I conclude that Perez's Fourteenth Amendment procedural due process claim against the defendants for the defendants' violations of prison policy must be dismissed as not plausible. 28 U.S.C. § 1915A(b)(1).

b.     Medical Deliberate Indifference

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [Fourteenth Amendment] substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (citation omitted). Consequently, the Eighth Amendment, and not the Fourteenth Amendment, governs sentenced inmates' claims of medical deliberate indifference. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Because Perez's claim involves medical deprivations that occurred while he

10

was a sentenced inmate, I must dismiss his Fourteenth Amendment substantive due process claim as not plausible.   28 U.S.C. § 1915A(b)(1).

## ORDERS

(1) Consistent with the foregoing discussion, I permit Perez to proceed on his Eighth Amendment claims against Dr. Kuehn, NP Richards and RCOO Cruz for deliberate indifference to his medical needs.   Perez may also proceed on his state law claims against the defendants. All other claims, including official capacity claims, are DISMISSED.

(2) The Clerk shall verify the current work address for Dr. Kuehn, NP Richards and RCOO Cruz with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the second amended complaint [Doc. No. 14] at their confirmed addresses within **21 days** of this Order, and report on the status of the waiver request on the **35th day** after mailing.   If a defendant fails to return the waiver request, the Clerk shall arrange for in-person individual capacity service by the U.S. Marshals Service on the defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall send courtesy copies of the second amended complaint [Doc. No. 14] and this Order to the DOC Office of Legal Affairs and the Connecticut Office of the Attorney General.

(4) The defendants shall file a response to the second amended complaint within **60 days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.   The defendants may also include any and all additional

11

defenses permitted by the Federal Rules of Civil Procedure.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **6 months, or 180 days,** from the date of this Order.   Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **7 months, or 210 days,** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **21 days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Perez changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the court.   Failure to do so can result in the dismissal of the case.   He must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or the defendants' counsel of his new address.

**SO ORDERED** at Bridgeport, Connecticut this 16th day of July 2026.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

12